REDMANN, Judge.
Plaintiff appeals from a judgment dismissing his workmen’s compensation suit for injuries sustained in an automobile collision which occurred as he was making a left turn from a public roadway into his employer’s premises to report for work.
Plaintiff worked as a truck driver for defendant, and defendant agrees that on the day of the collision plaintiff was to make an early distant delivery, for which he properly should have started out shortly after the 5 :00 a. m. hour of the collision.
Not having yet started his work, and not being yet on his employer’s own premises (although he says the left front wheel of his car was on those premises), plaintiff must recover, if at all, under the theory referred to as the proximity rule or threshold doctrine. Defendant argues from Verret v. Travelers Ins. Co., 166 So.2d 292 (La.App.1964), that plaintiff is not entitled to compensation under the proximity rule because there was “no hazard peculiar in this case that does not exist in the case of every employee who travels to work in his own automobile and is allowed the privilege of parking in a parking area adjacent to his employer’s plant.”
The proximity exception to the general rule of no liability for injuries while going to and from work[1] was held not to contravene the Fourteenth Amendment in Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532 (1923).
The expression of the exception starts in Louisiana in Jones v. Louisiana Central Lbr. Co., 2 La.App. 260 (1925), cert. denied. There the successful . plaintiff lived on his employer’s property, but his quarters were separated from the sawmill where he worked by a railroad right of way, on which there stood a line of box and log cars used to log the mill. His foot was *727 crushed as he attempted to cross over the standing cars on his way to work. Tracking in part Parramore’s language, the court at 2 La.App. 262 stated “in principle the plaintiff was as though upon the actual premises of the defendant, * * * ” The court then added it thought plaintiff “was performing services arising out of and incidental to his employment.” Quoted as authority were Prevost v. Gheens Realty Co., 151 La. 508, 92 So. 38 (1922), a case of employee lodging on the premises; and Parramore[2] The court did not discuss any requirement as to the nature of the risk or hazard encountered in the area it considered “in principle * * * the actual premises.”
In Ward v. Standard Lbr. Co., 4 La.App. 89 (1925), the successful plaintiff was crossing the highway adjacent to the employer’s premises to go to lunch when struck by a fellow-employee’s car. The court opined
“* * * the place of the accident, being in close proximity to the place of employment and being the way over which plaintiff had access to the premises, * * * the accident arose in the course of the employment. [Citing Jones and Parramore.2”
The court immediately added that the highway risk being increased by the fellow-employee’s use, the hazard was greater by reason of the employment, and the accident arose out of the employment.
Baker v. Texas Pipe Line Co., 5 La.App. 25 (1926), cited by plaintiff, involved an accident which at least began to occur on the employer’s actual premises, as plaintiff was struck by, or slipped at, the exit gate post and fell from a truck into a cattle guard which injured him. Baker did not cite Parramore, Jones or Ward, and it may be questioned whether it adds anything to the development of the proximity or threshold doctrine, although the court did note, at 5 La.App. 27,
“The evidence shows that plaintiff was leaving his employer’s premises at the close of the day’s work and that the entrance at which he was hurt was one commonly used by defendant’s employees in leaving the premises, whether walking or riding.”
In Le Blanc v. Ohio Oil Co., 7 La.App. 721 (1928), cert. denied, plaintiff was employed on an 80-acre oil lease, through which a public, highway ran, and plaintiff’s usual work required him to cross the highway to go from one part of the premises to the other. However, the injury occurred prior to his starting the day’s work, as he alighted from an automobile and was crossing the highway on foot to go to work.
The court opined, at pages 722-723:
“* * * the question does not relate so much to the time of the accident as to the place of the accident, and as to whether the risk resulting in the accident was incidental to the employment.
“While the place of the accident was upon the public highway, and the accident was directly attributable to a risk which was common to all persons using the highway, these facts do not necessarily preclude recovery, provided it can be said that the employment resulted in exposing plaintiff to the risk beyond that to which the public was subjected (Cudahy Packing Co. v. Parramore, supra; Katz v. [Kadans] Kadaus & Co., 232 N.Y. 420, [134 N.E. 330] 23 ALR 401) or that it can be said the accident occurred on the employer’s own premises [Citing Parramore, Jones and Prevost, supra].

*728 “In addition to the facts previously stated, the evidence, we find, shows that the highway was the only practical way of immediate ingress and egress to and from the premises, and it appearing that the employment of plaintiff required the use of the highway at the point where the accident occurred in the performance of his work, we are of the opinion that the place of the accident should be considered as on the premises of the employer and the accident to have arisen in the course and out of the employment, and the defendant held liable under the statute.” (All emphasis supplied.)
Thus Le Blanc states the rule as requiring either more exposure to the common risk or justification for treating as on premises. The quoted portion of the opinion seems to follow the “access to the premises” language of Ward as well as the basic constructive-premises language of Jones. But it also notes an added circumstance, namely that the in fact off-premises area was one plaintiff had to use during his work, and not merely to get immediately to and from work. (And we note the somewhat similar situation of our plaintiff, who of course had to use the entrance-exit during his work of driving trucks from and to the actual premises.)
In Crysel v. R. W. Briggs & Co., 146 So. 489 (La.App.1933), the court declared the general rule of no coverage to and from work, then the various exceptions by description of the cases declaring them, and held plaintiff’s case not within any exception. The court said of Ward, “a workman on his way to lunch * * * struck by an automobile on the highway * * * contiguous to his employer’s plant, was held injured in the course of his employment.” Of Jones, it said “The railroad was not only immediately adjacent * * * but was so connected * * * as to form in principle a part” of the premises. Of Le Blanc, it said “The court held that the road was the only practical way of ingress and egress, and because of its situation should be regarded as a part of the premises * * The court’s conclusion in Crysel was that plaintiff, injured some 400 yards from the actual highway construction site, “was actually or constructively, neither on the premises of his employer or on premises adjacent thereto.”
In Harless v. Forgy, Hanson & McCorkle, 149 So. 135 (La.App.1933), the court stated at 149 So. 135-136, the question was whether
“* * * the place at which he was injured was in such close proximity to the employer’s premises, or so connected therewith, that in principle the accident may be considered as having happened on the actual premises, and consequently to have arisen in the course of the employment.”
Again, in Harless special hazard is not discussed as an element necessary to recovery. The court refused recovery, saying at p. 136:
“* * * it would require a strained construction of the statute, indeed, to hold that an accident which happened after the employee’s work for the day had ceased, on a stranger’s truck, four hundred yards away from the employer’s premises, was in effect and in law an accident which occurred on the premises.”
Thus by 1933 Louisiana had granted recovery in Jones, Ward and Le Blanc without specifying special hazard as a necessary element of the proximity exception, and had refused recovery in Crysel and Harless because of lack of proximity, without specifying special hazard as a necessary element.
Then in Walker v. Lykes Bros.-Ripley S.S. Co., 166 So. 624 (La.App.1936), where recovery was denied for other reasons, the court stated, at 166 So. 626-627, the proximity exception exists when the injury occurs before or after working hours and in close proximity to the premises
“* * * an(j results from a hazard to which the employee, by reason of his *729 employment, when considered in connection with the situation of his employer’s premises, is subjected to a greater risk than the public in general. For this exception to be invoked, the means of customary ingress and egress to and from the master’s premises must be such as to compel the employee to submit, by reason of his employment, to greater hazards than the public in general, although such risks may exist, in some measure, with respect to the general public. Moreover, it has been held in these cases that a continuance of the course of the employment is extended in allowing the employee a reasonable time, before or after working hours, to enter or leave the premises, or hazards adjacent thereto, [citing Parramore and Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402 (1928).]
;jc j]í ^ * * *
“Furthermore, the application of the exception to the general rule is without pertinence, unless the location of the master’s premises is such that, contiguous thereto, there are hazards which the plaintiff necessarily encounters in going to or departing from work which peculiarly subject him, by reason of his employment, to greater risks than those to which the general public is exposed.

“* * * the theory of the extension of the course of the employment after the working hours is that the master has selected a site for his workmen which necessarily and peculiarly subjects them, by reason of their employment, to dangers or risks to which the public is not equally exposed.”
Thus in Walker, for the first time in Louisiana, the court gives full expression to the requirement that the injury must result from a risk to which the workman is exposed not as a member of the general public, but as an employee, and by reason of his employment; but there is still no suggestion that the hazard itself must be peculiar or unusual in nature.
The requirement Walker expresses will be recognized as the statutory one of “arising out of” the employment.
In Parramore this requirement was urged by the employer, who argued that the accident “was not the result of any industrial risk but arose from a common peril to which the public generally was exposed” (263 U.S. 423, 44 S.Ct. 154). In response to this argument the court stated a “causal connection” between the injury and the employment was sufficient to meet Fourteenth Amendment requirements, and then discussed English cases on “arising out of” employment. Granting recovery, the court noted the workman was obliged regularly and continuously to cross the railroad track as the means of ingress and egress as a necessary concomitant of his employment, “resulting in a degree of exposure to the common risk beyond that to which the general public was subjected” (263 U.S. 426, 44 S.Ct. 155).
This language of Parramore, and the similar language of Walker, is of the kind used in treating “arising out of” employment cases; see Malone, Louisiana Workmen’s Compensation Law and Practice, § 193.
In Walker, recovery was denied not because of the absence of employment-connected risk in the adjacent area, but because the workman had successfully passed that risk when he crossed the covered roadway as required for egress from his employment, and was for personal reasons again crossing the roadway when the accident occurred (some 1000 to 1200 feet from the actual site of employment).
The next Louisiana case discussing the proximity rule is Babineaux v. Giblin, 37 So.2d 877 (La.App.1938), where recovery was denied for death occurring some 1.4 miles from the employment while the employee was driving his own car to work *730 from his home in another city. The court said of the proximity cases, at 37 So.2d 882:
“ * * * They all fall within the classification of cases in which the accident happened in such close proximity to, or so connected with the premises, that, in principle it may be considered as having happened on the actual premises of the employer, and consequently to have arisen in the course of employment. [Citing Parramore and Le Blanc.] In the case at bar, the accident happened 1.4 miles from the city limits * * * It cannot therefore be said that the accident in this case happened in close proximity to or so connected with the premises, that it may be considered as having happened on the actual premises of the employer. Furthermore, the road traveled by the decedent cannot be said to be the means of ingress and egress of the employer’s employees to the premises.”
Interestingly, the court had pointed out that the employee’s living in another city, rather than his employment, was what required him to drive that particular road; thus its reference to ultimate ingress and egress suggests a difference in result at that final point where, regardless of the employee’s choice of residence, he must by reason of his employment utilize the ingress and egress of the premises of the employer.
Then came Attaway v. Fidelity & Cas. Co. of N.Y., 39 So.2d 632 (La.App.1939), where an employee driving his own car. in a city street was killed at a railroad crossing adjacent to and connected with the employer’s plant. The court granted recovery, stating, at 39 So.2d 634:
“ * * * the employer is responsible for an injury which occurs to an employee at the public crossing lying adjacent to his place of employment and at a time just prior to his expected entry onto the premises for the purpose of immediately beginning the duties of his employment, provided the proximity of the employer’s premises to the public passageway be a necessity — or at least a logical requirement — to the convenient conduct of its business. This is true even though the public generally is also subject to the hazards of the crossing at which the injury occurs. The rule appears to be that, granting that injury occurs on premises adjacent to those of the employment and within a reasonable time before or after working hours, it is sufficient that the employee’s exposure to the hazard by reason of his employment be only, in some measure, greater than that which exists with respect to the public generally. * * * ”
In Guient v. Mathieson Chem. Corp., 41 So.2d 493 (La.App.1949), the employee recovered for injuries sustained while crossing the highway in front of the entrance to the employer’s premises to go to work after arriving on a public bus. The court, at 41 So.2d 493, said the “proximity rule” makes an accident compensable
“ * * * which occurs at a public crossing which is in such close proximity to the premises of the plant at which he works as to constitute a necessary convenient passageway for the conduct of the employer’s business, and in principle, therefore, may be said to be a part of the premises.”
Guient and Attaway both seem to emphasize anew the constructive premises theory, pointing out the nature of the ingress and egress as a necessary element of the conduct of the employer’s business, as necessary “in principle” as the premises themselves, and “in principle * * * a part of the premises.” If the proximity rule is stated merely as an extension of the employer’s premises beyond their property-law boundaries to include the final, necessary ingress and egress, in favor of an employee timely arriving at or leaving work, then the question whether the accident “arises out of” the employment should be governed by the same considerations as in any on-premises situation.
Discussing the meaning of “arising out of” the employment, Edwards v. Louisiana *731 Forestry Comm., 221 La. 818, 60 So.2d 449, 451 (1952), quotes with approval the conclusion :
“ * * * that under the broad view now taken of these statutes, ‘ * * * no more is necessary than that the work subject the employee to a peril which comes from the fact that he is required to be in the place where it strikes when it does so. It is immaterial whether the place is the employer’s premises or a street; whether the risk arises from physical features or human agencies connected with the place; whether it is a common occurrence or an extraordinary happening; one which threatens only employees at work or others also.’ * * * ”
The court then observes:
“These pronouncements reflect the modern judicial concept of compensation legislation, which is based on the premise that the phrase ‘arising out of the employment’ does not have the same connotation as the common law ‘scope of employment,’ the interpretation earlier attributed to it, but means, instead, the employment viewed from any aspect — its nature, conditions, obligations, and incidents. They lend emphasis to the growing recognition of the fact that judicial interpretation of these acts creating liability irrespective of fault in the light of common law liability predicated on fault hedges this humanitarian legislation about with the very restrictions it sought to circumvent and abolish, and nullifies the underlying insurance principle inherent in this industrial compensation. * ‡
Subsequent to Attaway and Guient, the proximity rule was applied to afford recovery in Doyle v. Penton Lbr. Co., 56 So.2d 774 (La.App.1952). There the employee on foot had a choice of entering the plant either by crossing over a railroad track and walking along a gravel road some 400 feet to the plant, or by walking the railroad track itself spme 300 feet to the plant; he chose the latter (as he had often done previously) and was killed by a train. The court stated the proximity rule simply, at 56 So.2d 776, as applicable where the injury occurs near the employment and from a hazard to which the employee is exposed because of his employment. It distinguished Walker on the basis that in Doyle the employee had not yet successfully passed the hazard of the railroad track, but was in the process of doing so when injured.
Then in Hammer v. Lazarone, 87 So.2d 765 (La.App.1956); Williams v. Sewerage & Water Bd. of New Orleans, 90 So.2d 582 (La.App.1956); and Verret v. Travelers Ins. Co., 166 So.2d 292 (La.App.1964); compensation under the proximity rule was denied.
In both Hammer and Williams the factual situations were compared to that of Walker and the proximity rule was refused application on the basis of Walker: the risk unavoidably connected with egress from the employment into or across a street was safely past, and the employee was injured while entering the street a second time for his own purposes.
In Verret, the only case cited is Walker, and its language relative to the site of employment subjecting the workmen “to dangers or risks to which the public is not equally exposed” is italicized, at 166 So.2d 294 — 295. The court then says:
“The only essential difference between the facts present in the Walker case and those presently before us is that the petitioner in the present suit alleges that the noise from the conveyor increased the hazards to which decedent was subjected in going to and from work. It appears to us that the automobile traffic in the present case was no greater and probably was of a lesser degree than was present in the Walker case. The Trial Judge visited the scene of the accident and held that there was no peculiar hazard present in the instant case, and we find nothing to indicate that he erred in his holding.”
It will be recalled that Walker did not deny recovery because the traffic on the covered roadway was light, but because the *732 employee had already safely crossed the roadway as necessary to his egress from employment, and had re-entered the roadway for his own purposes when the accident occurred.
In Verret, plaintiff longshoreman had to walk from a ship along a grain conveyor’s catwalk, which constituted an elevated cross-walk over a private street on the river side of the levee, until he reached the top of the levee where he was checked off. He then descended the river side of the levee, and was re-crossing the same street he had crossed while on the catwalk, going towards his car, when he was killed, by a fellow-employee’s car. (Had he reached his car he would still have had to cross the levee in it to get to the land side and the public streets.)
Since there was, in a sense, a second entry into the same street, perhaps this is the factual similarity to Walker.[3]
Thus Verret seems to say, in the above quoted language, that recovery is refused both because the employment-connected risk had already been surmounted, and the risk was not a “peculiar hazard.”
To the extent Verret may state a “peculiar hazard” requirement for recovery in proximity cases, as defendant here urges, it overstates the basic “arising out of the employment” requirement, and we cannot adopt this construction in view of the interpretation of “arising out of” declared by our Supreme Court in Edwards, supra.
From all the cases discussed, it appears that when an employee, at a reasonable time before or after work, enters the ingress or egress of the premises of the employer, which is necessary to the business of the employer, the employee is considered in principle as on the premises and an accident there occurring is one in the course of his employment; and because he must, by reason of the employment, traverse the ingress and egress (regardless of what going-and-coming route his place of residence requires) and is thus exposed to the risk as an employee rather than as a member of the general public, the accident is one arising out of the employment and the injury is compensable under the workmen’s compensation act.
Research reveals two cases outside of Louisiana which are factually similar to the present matter and in which compensation was awarded; Pacific Indem. Co. v. Industrial Accident Comm’n, 28 Cal.2d 329, 170 P.2d 18 (1946); and Greydanus v. Industrial Accident Comm’n, 63 Cal.2d 490, 47 Cal.Rptr. 384, 407 P.2d 296 (1965). In the first, the collision occurred on the street as the employee was turning into the employer’s parking lot; in the second, as he was turning off the highway into the driveway leading to the employer’s milking barn. In the latter case, the court asserts awarding compensation accords with the trend of decisions in other states, citing cases from Maine, Minnesota and Alabama.
Plaintiff here is entitled to workmen’s compensation. It is stipulated he was totally disabled for 18 weeks; that his wages would entitle him to the maximum weekly payment of $35; and that his medical expenses were $168.
However, he seeks compensation in excess of 18 weeks for a one and a half to two inch facial scar he claims is a disfigurement compensable under LSA-R.S. 23:1221(4) (p).
Generally, that provision of the statute is applicable only “in cases not falling within any of the provisions” otherwise affording benefits, Mack v. Legeai, 144 La. 1017, 81 So. 694 (1919); see also Bergeron v. New Amsterdam Cas. Co., 243 La. 108, 141 So.2d 832 (1962).
Plaintiff’s 18-week temporary total disability is provided for by LSA-R.S. 23:1221 *733 (1); this period cannot be construed as a mere convalescence period in respect to the scar (see Malone, supra, § 283).
Plaintiff’s request that attorney’s fees and penalties be assessed against the insurer is refused; the insurer’s refusal to pay was not arbitrary, LSA-R.S. 22:658.
The judgment appealed from is reversed, and judgment is now rendered in favor of plaintiff, Carroll P. Templet, and against Intracoastal Truck Lines, Inc. and its insurer American Casualty Company, in solido, awarding plaintiff compensation of $35.00 per week for 18 weeks beginning July 15, 1964, together with legal interest on each weekly payment from date until paid; and further awarding plaintiff $168.00 medical expense, with legal interest from judicial demand until paid; and for all costs.
Reversed and rendered.

. The terms “exception” and “general rule” are not intended as conclusions, but as con-venienees.

. Also cited was Gregory v. Standard Oil Co. of La., 151 La. 228, 91 So. 717 (1922), where an oil field worker drowned while crossing a lake to reach his work. There was no contention the accident did not arise out of and in the course of his employment; the dispute was whether his parents were his dependents.

. It may be argued that in Walker the re-entry was not necessary to egress, and in Verret it was (unless egress may have been possible down the land side of the levee, which is not indicated by the opinion ; if so Doyle would seem pertinent).